UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEMARIE V., | Case No. 21-cv-02192-AGT |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| KILOLO KIJAKAZI, | Re: Dkt. Nos. 22, 25 |
| Defendant. | |

Plaintiff Rosemarie V. moves for summary judgment to reverse the final administrative decision of the Social Security Administration Commissioner ("Commissioner"), which found Plaintiff not disabled and therefore denied her application for benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*.  Having read the parties' papers and administrative record and having carefully considered their arguments and relevant legal authority, the Court GRANTS Plaintiff's motion for summary judgment, DENIES the Commissioner's motion for summary judgment, and REMANDS for further proceedings.

## I.      PROCEDURAL HISTORY

On October 27, 2015, Plaintiff filed an application for Social Security Disability Insurance, alleging that she became disabled on September 4, 2014.  Administrative Record ("A.R.") 167-75.  An Administrative Law Judge ("ALJ") originally held a hearing on December 21, 2016, and issued an unfavorable decision on May 17, 2017.  A.R. 42-90, 170-78.  On August 21, 2018, the Appeals

1   Councils granted review, vacated the May 17, 2017 decision, and remanded the case to the ALJ.[1]

2   On remand from the Appeals Council, the case was assigned to a new ALJ.[2]  A.R. 93.  The

3   ALJ held a hearing on December 19, 2018, after which she ordered Plaintiff's first physical

4   consultative examination in the case, an additional psychiatric consultative examination, and the

5   opinion of a medical expert ("ME").  A.R. 106.  Plaintiff subsequently underwent physical and

6   psychological consultative examinations on February 12, 2019, and August 20, 2019, respectively.

7   A.R. 1043, 1052 (Dr. Eugene McMillan's physical examination and report); A.R. 1053-58 (Dr.

8   Antoinette Acenas' psychological examination and report).  On February 26, 2020, the ALJ held a

9   second and supplemental hearing at which Plaintiff, the ME, Dr. David Jarmon, and a vocational

10  expert ("VE") testified.  A.R. 108-37.  The ALJ again issued an unfavorable decision on April 17,

11  2020.  A.R. 22-34.

12  The ALJ determined that Plaintiff has the following severe impairments:  major depressive

13  disorder, anxiety, mood disorder, unspecified bipolar disorder, insomnia, and left atrial

14  enlargement.[3]  A.R. 25.  The ALJ also determined that Plaintiff retained a residual functional

15  capacity (RFC) for medium work with several modifications.  A.R. 27.  Relying on the opinion of

16  a vocational expert who testified that an individual with such an RFC could perform other jobs

17  existing in the economy, including hand packager and hospital cleaner, the ALJ concluded that

18  Plaintiff was not disabled.  A.R. 33, 130-34.

19  After the Appeals Council denied review, Plaintiff sought review in this Court pursuant to

20  42 U.S.C. § 405(g).

21  **II.     STANDARD OF REVIEW**

22  Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review a decision by the

---

[1] The Appeals Council reversed for three reasons, including:  (1) further consideration of Plaintiff's residual functional capacity ("RFC"); (2) consideration of treating psychiatrist, Dr. Catherine Reed's July 9, 2015 opinion, A.R. 703-08; and (3) re-evaluation of treating psychologist, Dr. Friend's November 19, 2014 opinion.  *See* A.R. 185.

[2] Unless otherwise specified, further references to "the ALJ" refer to the ALJ following the Appeals Council's remand, ALJ Evangelina Hernandez.  A.R. 93.

[3] The ALJ also listed Plaintiff's asthma as a severe impairment.  A.R. 25.  However, both parties agree this was a mistake because the ALJ's subsequent step two discussion explained why the ALJ found that Plaintiff's asthma was *not* severe.  A.R. 25.

United States District Court
Northern District of California

Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (quotation omitted). It is "more than a mere scintilla but less than a preponderance." *Tackett*, 180 F.3d at 1098 (quotation omitted). "In determining whether the Commissioner's findings are supported by substantial evidence, we must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Smolen*, 80 F.3d at 1279. The Court may not affirm the Commissioner's decision "simply by isolating a specific quantum of supporting evidence." *Tackett*, 180 F.3d at 1098 (quotation omitted).

"If the evidence can reasonably support either affirming or reversing the Commissioner's decision, this [Court] may not substitute its judgment for that of the Commissioner" and must affirm. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quotation omitted).

## III. DISCUSSION

Plaintiff suffers from both physical and mental impairments. Because several of Plaintiff's arguments are specific to the type of impairment, the Court addresses Plaintiff's mental and physical impairments separately where appropriate.

As for her mental impairments, Plaintiff argues: (1) the ALJ erred in rejecting Plaintiff's symptom testimony; (2) the ALJ erred in her treatment of the medical opinions from: (a) therapist, Jena Nawy, (b) examining psychologist, Dr. Laura Catlin, and (c) ME and psychologist, Dr. David Jarmon; and (3) the ALJ erred in her Paragraph "B" analysis at step two.

Regarding her physical impairments, Plaintiff argues: (4) the ALJ erred in rejecting Plaintiff's symptom testimony regarding her cardiac impairments, left-hand impairment, and asthma; and (5) the ALJ erred in failing to find Plaintiff's asthma and left-hand impairment severe

United States District Court
Northern District of California

3

at step two.

Finally, regarding both her physical and mental impairments, Plaintiff contends: (6) that the ALJ's RFC determination was not supported by substantial evidence; and (7) the ALJ erred in relying on VE testimony that was itself based on an incomplete hypothetical.

## A.   Plaintiff's Mental Impairments

### 1.   ALJ's Rejection of Plaintiff's Symptom Testimony Regarding Her Mental Impairments

The relevant period in this case extended from Plaintiff's alleged onset date, September 4, 2014, through August 2019, when Plaintiff turned sixty-five years old and became entitled to SSI based on age.

Plaintiff testified that in 2014, when she was going to school full-time, she became overwhelmed and suffered from a mental breakdown, and subsequently became homeless.  A.R. 61. She also began having anxiety attacks, was unable to sleep, and was very depressed.  A.R. 61, 409. Plaintiff then quit school, avoided other people, and spent most of her time in bed.  A.R. 414, 65, 75-78.  Plaintiff continues to experience good days and bad days.  A.R. 65-66.  Bad days occur approximately eight to ten days per month, during which Plaintiff will stay in bed all day.  A.R. 66.

While the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ nevertheless discounted Plaintiff's symptom testimony as "not entirely consistent with the medical evidence and other evidence in the record." A.R. 28.

In assessing a claimant's subjective testimony, an ALJ conducts a two-step analysis.  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine "whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'"  *Tommasetti,* 533 F.3d at 1039 (quoting *Smolen*, 80 F.3d

at 1281).  These reasons must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  "General findings are insufficient."  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Plaintiff accurately notes that in rejecting her symptom testimony, the ALJ failed to link the discredited testimony to the particular portions of the record supporting the adverse credibility determination.  *See Morsea v. Berryhill*, 725 F. App'x 463, 465 (9th Cir. 2018) (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015)) (noting that ALJ is required to "link the testimony to particular parts of the record supporting the adverse credibility determination"); *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing *Treichler*, 775 F.3d at 1102) (holding that ALJ is required to "specifically identify the testimony [from a claimant] [they] find[] not to be credible and . . . explain what evidence undermines that testimony").  Instead, after making the boilerplate finding that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," the ALJ simply summarized the various clinical findings regarding Plaintiff's mental impairments.  *See* A.R. 28-30.  But "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible."  *Brown-Hunter*, 806 F.3d at 494; *see also Bunnell*, 947 F.2d at 346 ("[A] reviewing court should not be forced to speculate as to the grounds for an [ALJ's] rejection of a claimant's [symptom] allegations[.]").  The ALJ thus committed legal error by failing to specifically identify which part(s) of Plaintiff's symptom testimony she found not credible and by failing to link that testimony to the evidence that contradicted it.

The Court nevertheless addresses the two general reasons that the ALJ appears to offer for rejecting Plaintiff's symptom testimony regarding her mental impairments:  (1) that Plaintiff's mental status examinations were "unremarkable," A.R. 29; and (2) that Plaintiff's symptoms stabilized and/or improved with medication.[4]  A.R. 29.

---

[4] Additionally, while the ALJ occasionally references Plaintiff's daily activities throughout the decision, these general references to the Plaintiff's daily activities cannot serve as a reason for discounting Plaintiff's symptom testimony where the ALJ has failed to "identify the testimony that was not credible, and specify what evidence [of daily activities] undermines the claimant's

United States District Court
Northern District of California

United States District Court
Northern District of California

Neither reason is sufficiently clear and convincing; nor are the reasons supported by substantial evidence. First, the majority of Plaintiff's mental status examinations ("MSE") in fact revealed abnormal findings. *See, e.g.*, A.R. 657-59 (March 2015 MSE observing depression, anxiety, panic attacks, and hallucinations); A.R. 999 (April 2018 MSE revealing that Plaintiff was agitated, anxious, labile, irritable, and experiencing "racing thoughts and [a] flight of ideas," along with visual hallucinations); A.R. 1003 (May 2018 MSE during which Plaintiff was anxious, labile, hyperverbal, and experiencing hallucinations); A.R. 1054 (demonstrating depressed mood and impaired memory during September 2019 MSE); *see also* Dkt. No. 22 at 14 & n.10 (providing citations to forty MSEs and noting abnormal findings at twenty-six of the MSEs). In characterizing Plaintiff's MSEs as "generally unremarkable" with "no significant abnormalities," the ALJ inappropriately cherry-picked among the minority of MSEs with the most favorable findings. *See Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017) (improper for ALJ to "cherry-pick" absence of certain symptoms from medical evidence as opposed to undertaking a "broader development" of the evidence in its entirety); *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (holding that "cherry-picked" evidence about Plaintiff's activities does not provide a clear and convincing reason for rejecting her symptom testimony).

The ALJ similarly erred in concluding that evidence of Plaintiff's stabilization and/or improvement with medication provided a clear and convincing reason to reject her mental impairment testimony. While Plaintiff showed stabilization at times during 2014-2019, her mental condition nevertheless waxed and waned over the years. *See* A.R. 573, 576 (Sausal Creek Clinic physician prescribed Wellbutrin and Trazodone in June 2014 due to Plaintiff's severe depression); A.R. 680-83 (Plaintiff's prescription for Zoloft increased after she is seen at Schuman-Liles Clinic in August 2014 for increasing anxiety, depression, and hallucinations); A.R. 664 (Plaintiff is

---

complaints." *Treichler*, 775 F.3d at 1102 (citing *Reddick*, 157 F.3d at 722). However, even if the Court were to consider the ALJ's intermittent references to Plaintiff's daily activities, the Plaintiff's use of public transportation and grocery shopping are "not consistent with regularly attending a full-time job." *See* A.R. 28; *see also Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017) (analyzing the claimant's activities of grocery shopping, television watching, and weekly church attendance in the past); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (ALJ can rely on daily activities only "if a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.").

United States District Court
Northern District of California

beginning to feel better in December 2014 after tapering off of Zoloft and starting Effexor); A.R. 658 (March 2015 medical notes stating that Plaintiff had seen improvement on Effexor "in the past, but not with latest increase"); A.R. 701, 703 (physician at Pathways to Wellness clinic notes in July 2015 that Plaintiff is medication "adherent" but has an "inadequate response to medication" and is again experiencing severe depression); A.R. 953 (Pathways to Wellness clinician notes that Plaintiff is responding "well" to medication in October 2016); A.R. 1010-12 (West County clinic physician notes in August 2018 that Plaintiff's medications are "stabilizing mood swings," but that Plaintiff remains "depressed" and "anxious" with "poor impulse control and anger").

Plaintiff accurately notes that her mental health medications were changed no fewer than twenty times during the relevant period as her mental condition fluctuated.  *See* Dkt. No. 22 at 18 (citing A.R. 573, 584, 594, 602, 658, 662, 666, 670, 674, 678, 682, 687-88, 950, 981, 983, 992, 1003).  As the Ninth Circuit recognizes regarding mental impairments, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."  *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014); *see also L.L. v. Kijakazi*, No. 20-cv-07438-JCS, 2022 WL 2833972, at *15 (N.D. Cal. July 20, 2022) ("In the context of mental health, it is an error to reject a claimant's testimony based on isolated instances of improvement, since symptoms regularly wax and wane during treatment.") (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)).

For these reasons, the ALJ's rejection of Plaintiff's subjective symptom testimony regarding her mental impairments was not supported by substantial evidence.

### 2. ALJ's Treatment of Medical Opinions Regarding Plaintiff's Mental Impairments

#### a. Medical Opinions

Numerous medical opinions regarding Plaintiff's mental impairments exist for the relevant period in this case as described below.

*Dr. Danice Friend*

Psychologist, Dr. Danice Friend, treated Plaintiff on a weekly basis from June to November

7

United States District Court
Northern District of California

2014, and diagnosed Plaintiff with major depressive disorder. A.R. 634. On November 19, 2014, Dr. Friend completed a mental questionnaire form noting that in terms of daily activities, Plaintiff "may have some difficulty . . . understanding what is required of her." A.R. 632. Dr. Friend stated that Plaintiff "was able to interact with other people" and "to sustain and complete tasks," but noted that she was "tearful" and "no longer ha[d] the motivation" to complete college courses that she had commenced. A.R. 633. Ultimately, Dr. Friend opined that Plaintiff "may have difficulty coping under [the] stress of full-time work," but that "she would like the opportunity to work part-time." A.R. 633. Dr. Friend further noted that Plaintiff's depression was expected to improve and that it had, in fact, done so since she began a new medication. A.R. 632, 634. The ALJ gave "partial weight" to Dr. Friend's opinion. A.R. 31.

*Dr. Catherine Reed*

Subsequently, psychologist, Dr. Catherine Reed, from the Pathways to Wellness Clinic, treated Plaintiff from July through October 2015.[5] Dr. Reed diagnosed Plaintiff with mood disorder, bipolar disorder, anxiety, and alcohol abuse. A.R. 707. She opined that Plaintiff possessed moderate limitations in several functional areas, including her activities of daily living, in maintaining concentration, persistence and pace, and with episodes of decomposition and an increase of symptoms. A.R. 707. The ALJ failed to address Dr. Reed's opinion.[6] *See* A.R. 31-32.

*Dr. Laura Catlin*

In February 2017, Plaintiff was examined and evaluated by consultative psychologist, Dr. Laura Catlin. A.R. 956-65. In addition to a clinical interview and a mental status examination, Dr. Catlin administered several cognitive and psychological tests including the Wechsler Adult Intelligence Scale ("WAIS"), the Repeatable Battery for the Assessment of Neuropsychological

---

[5] Dr. Reed left the clinic in November 2015, at which point Plaintiff began seeing Dr. Kapil Chopra, whom the record suggests Plaintiff saw until May 2016. A.R. 694, 696, 687.

[6] In August 2018, the Appeals Council remanded the case to the ALJ with instructions to evaluate Dr. Reed's opinion, noting that the first ALJ failed to consider Dr. Reed's opinion in his May 2017 decision. A.R. 185. On remand, ALJ Hernandez similarly ignored Dr. Reed's opinion in her April 2020 decision. *See* A.R. 22-34. Plaintiff, however, does not challenge ALJ Hernandez's subsequent failure to consider Dr. Reed's opinion before this Court. *See* Dkt. No. 22 at 7, 10-18. Accordingly, the Court has not addressed the issue.

Status ("RBANS"), and the Beck Depression Inventory ("BDI").  A.R. 956.  Dr. Catlin opined:

> Functionally, [Plaintiff] has numerous limitations.  She has never lived independently and has had limited employment.  She has been unsuccessful in school and has a limited education.  She has received little mental health treatment and is struggling to manage her mental health symptoms.

A.R. 963.  Dr. Catlin further opined that Plaintiff had marked impairments in twenty out of twenty-three functional categories, and that she possessed extreme impairments in two of the categories, including her abilities to "carry out detailed instructions" and to "understand and remember detailed instructions."[7]  A.R. 963-64.

The ALJ accorded Dr. Catlin's opinion "little weight," reasoning that: (1) the opinion was based on Plaintiff's subjective complaints and was "sympathetic in nature;" (2) Dr. Catlin conducted a one-time examination; (3)  the opinion was inconsistent with the evidence as a whole, which did "not show marked or extreme limitation in mental functioning as the [MSEs] were generally unremarkable;" and (4) the opinion was not reflective of Plaintiff's ability to maintain concentration at the hearing.  A.R. 31.

*Therapist Jena Nawy*

Approximately one year after Dr. Catlin's examination, in April 2018, Plaintiff began treatment at West County Behavioral Health ("WCBH") in Richmond, California, where she was treated by psychiatrist, Dr. Vinod Sharma, and therapist, Jena Nawy, LCSW.  A.R. 1000, 1013.  In December 2018, therapist Nawy completed a mental impairment questionnaire and opined regarding Plaintiff's functional limitations based on Ms. Nawy's regular therapy sessions with Plaintiff between August and December 2018.  A.R. 1041.  Therapist Nawy opined that Plaintiff possessed marked impairments in five categories, including:  (1) "perform[ing] at a consistent pace without an unreasonable number and length of rest periods;" (2) "accept[ing] instructions and respond[ing] appropriately to criticism from supervisors;" (3) "work[ing] with or near others without being unduly distracted or distracting them;" (4) "interact[ing] appropriately with the general public;" and (5) "deal[ing] with normal work stress."  A.R. 1042.  Therapist Nawy further opined that Plaintiff's

---

[7] Dr. Catlin found that Plaintiff possessed "no impairment" in one functional category: "adhering to basic standards of neatness and cleanliness."  A.R. 964.

United States District Court
Northern District of California

1   impairments would interfere with her concentration or pace thirty to fifty percent of the time, and

2   that they would cause Plaintiff to be absent more than four days per month.  A.R. 1041.

3       Like Dr. Catlin, the ALJ gave therapist Nawy's opinion "little weight," reasoning that: (1)

4   the opinion was inconsistent with the evidence as a whole, which has "shown improvement in

5   [Plaintiff's] symptoms;" (2) it was based on Plaintiff's subjective complaints and was "sympathetic

6   in nature;" and (3) Dr. Nawy was an unacceptable medical source.  A.R. 31.

7       *Dr. Antoinette Acenas*

8       Thereafter, in August 2019, following the Appeals Council's remand, psychiatrist, Dr.

9   Antoinette Acenas, conducted a consultative psychiatric examination of Plaintiff as ordered by the

10  ALJ, which included a clinical interview, MSE, and several tests.  A.R. 1053-55.  Dr. Acenas

11  diagnosed Plaintiff with "unspecified depressive disorder, moderate stressors, and unemployment."

12  A.R. 1055.  Dr. Acenas opined that Plaintiff had no functional impairments in terms of her abilities

13  to understand, remember, and carry out simple instructions and to make judgments on "complex

14  work-related decisions."  A.R. 1056.  According to Dr. Acenas, Plaintiff possessed only mild

15  impairments in her abilities to make judgements on "simple work-related decisions," and to

16  understand, remember, and carry out complex instructions.  A.R. 1056.  Finally, Dr. Acenas opined

17  that Plaintiff possessed moderate impairments in her abilities to interact appropriately with the

18  public, supervisors, co-workers, and to respond appropriately to changes in a routine work setting.

19  A.R. 1057.

20      The ALJ gave Dr. Acenas' opinion "great weight," reasoning that it was consistent with the

21  evidence as a whole, which demonstrated that Plaintiff's symptoms were "stable with medication"

22  and that "her symptoms have improved with treatment."  A.R. 30.  In support, the ALJ further noted

23  that Plaintiff had "not had any psychiatric hospitalizations or admission[s]."  A.R. 30.

24      *Dr. David Jarmon*

25      In addition to Dr. Acenas' consultative psychiatric opinion, the ALJ also secured a medical

26  opinion from testifying ME, Dr. David Jarmon.  A.R. 110-13.  Dr Jarmon testified that he reviewed

27  Plaintiff's medical evidence, and that after "giving weight to the treating sources who [were]

28  working with her on a regular basis," it was his opinion "that [Plaintiff has] marked limitations in

1    understanding, remembering, and applying information, marked limitations in interacting with

2    others, marked limitations in concentration, persistence, and pace, and moderate to marked

3    limitations in adapting or managing herself." A.R. 111.

4        The ALJ gave Dr. Jarmon's opinion limited weight, asserting that "the substantial mental

5    limitations" were inconsistent with the treating records where Plaintiff's MSEs "have been generally

6    normal" and her symptoms improved with medication. A.R. 32.

7                              **b.    Legal Standards**

8        The Commissioner's rules and regulations regarding the evaluation of medical evidence

9    were revised in March 2017 and apply to claims filed on or after March 27, 2017. *See* 20 C.F.R.

10   § 404.1520c. For claims filed before March 27, 2017, the rules in 20 C.F.R. § 404.1527 apply. *Id.*

11   Because Plaintiff's claims were filed before March 27, 2017, the Court applies the rules then in

12   effect under 20 C.F.R. § 404.1527.

13       For claims filed before March 27, 2017, each of the three types of medical opinions—

14   treating, examining, and non-examining—is accorded different weight. 20 C.F.R. §§ 404.1527,

15   416.927. Generally, more weight is given to the opinion of a treating physician than to the opinion

16   of a physician who did not treat the claimant. *See Garrison*, 759 F.3d at 1012. Medical opinions

17   and conclusions of treating physicians are accorded special weight because these physicians are in

18   a unique position to evaluate the nature and extent of a claimant's conditions or impairments. *See*

19   *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *see also Bray v. Comm'r Soc. Sec. Admin.*,

20   554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to 'substantial

21   weight.'"); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (This court "afford[s] greater

22   weight to a treating physician's opinion because 'he is employed to cure and has a greater

23   opportunity to know and observe the patient as an individual.'") (quoting *Sprague v. Bowen*, 812

24   F.2d 1226, 1230 (9th Cir. 1987)).

25       When an ALJ gives a treating physician's opinion less than controlling weight, and the

26   opinion is not contradicted by another physician, the ALJ must provide "clear and convincing"

27   reasons for rejecting or discounting the opinion, supported by substantial evidence. *Trevizo*, 871

28   F.3d at 675. When a treating physician's opinion is contradicted by another physician, an ALJ must

United States District Court
Northern District of California

provide "specific and legitimate reasons" for rejecting or discounting the treating physician's opinion, supported by substantial evidence. *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quotations and citation omitted).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *See Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). As with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and if the opinion is contradicted, the ALJ can reject the opinion only for specific and legitimate reasons that are supported by substantial evidence in the record. *Id.*; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

### c.    Analysis

Plaintiff argues that the ALJ erred in rejecting the RFC opinions from consulting examining psychiatrist, Dr. Catlin, from Plaintiff's therapist, Ms. Nawy, and from non-examining ME, Dr. Jarmon. For the reasons that follow, the Court agrees.

### i.    Dr. Catlin

The ALJ's reasons for rejecting Dr. Catlin's RFC opinion were not sufficiently specific or legitimate; nor were they supported by substantial evidence. First, as the Ninth Circuit has expressly recognized, it was error for the ALJ to reject Dr. Catlin's opinion based on Plaintiff's subjective self-reporting, especially where the mental health provider relies also on objective procedures and tests, as Dr. Catlin did here. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (noting that psychiatric "[d]iagnoses will always depend in part on the patient's self-report"). This is because:

> [p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. *See Poulin* [*v. Bowen*], 817 F.2d [865,] 873 [ (D.C. Cir. 1987) ] ("[U]nlike a broken arm, a mind cannot be x-rayed."). Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.

*Id.*

Second, the ALJ's rejection of Dr. Catlin's opinion based on the one-time nature of her

United States District Court
Northern District of California

1   examination was not legitimate given that the only two medical opinions to which the ALJ accorded

2   "great" and "significant" weight were also from other one-time consulting examiners, Drs. Acenas

3   and McMillan, respectively.  *See* A.R. 30, 32.

4   Third, the ALJ failed to provide any record citations to support the finding that Dr. Catlin's

5   opinion was inconsistent with the longitudinal record, leaving the Court to guess which specific

6   record evidence the ALJ found inconsistent with Dr. Catlin's opinion.  *See* A.R. 31. This constituted

7   error.  *See Michael P. v. Comm'r Soc. Sec. Admin.*, No. 20-cv-01209-MK, 2022 WL 1302557, at *4

8   (D. Or. May 2, 2022) (holding that ALJ's rejection of examining physician's opinion was not

9   supported by substantial evidence where ALJ failed to cite to evidence in the record).  Moreover,

10  even if the Court were to assume that the ALJ intended to cite to the same MSEs as those she cited

11  to for rejecting Plaintiff's symptom testimony, for the reasons discussed above, the ALJ's

12  characterization of Plaintiff's MSEs as "generally unremarkable" with "no significant

13  abnormalities," was not supported by substantial evidence.

14  Finally, the Ninth Circuit does not permit the ALJ to rely on her own limited observation

15  regarding Plaintiff's "concentration" at the hearing to undermine an examining physician's medical

16  opinion regarding Plaintiff's functional limitations.  *See Perminter v. Heckler*, 765 F.2d 870, 872

17  (9th Cir. 1985) (noting that an "ALJ's reliance on [her] personal observations of [the claimant] at

18  the hearing has been condemned as 'sit and squirm' jurisprudence"); *accord Nadya I. v. Saul*, No.

19  19-cv-04373-TSH, 2020 WL 5232529, at *17 (N.D. Cal. Sept. 2, 2020); *P.E. v. Saul*, 445 F. Supp.

20  3d 306, 333 (N.D. Cal. 2020).

21  For these reasons, the ALJ's rejection of Dr. Catlin's opinion was not supported by

22  substantial evidence.

23  **ii.    Therapist Nawy**

24  The ALJ was correct that under the regulations that apply to this case, a licensed clinical

25  social worker ("LCSW") like therapist Nawy is not an "acceptable medical source," but is instead

26  an "other" medical source.  *See* 20 C.F.R. § 404.1513(d) & (d)(1) (eff. Sept. 3, 2013 to March 26,

27  2017) (noting that "[o]ther sources include, but are not limited to . . . [m]edical sources not listed in

28  paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths,

United States District Court
Northern District of California

chiropractors, audiologists, and therapists)").[8]  Nevertheless, "an ALJ must consider the opinions of medical providers who are not within the definition of 'acceptable medical sources;'" and "may give less deference to 'other sources' only if the ALJ gives reasons germane to each witness for doing so." *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017); *see also* Social Security Ruling ("SSR") 06-03, *Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims*, 2006 WL 2329939 (2006).[9]  The opinions of social workers "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  SSR 06-03P, 2006 WL 2329939, at *3; *see also Garrison*, 759 F.3d at 1013–14 (other sources "can provide evidence about the severity of a claimant's impairment(s) and how it affects the claimant's ability to work").  "The same factors used to evaluate the opinions of medical providers who are acceptable medical sources are used to evaluate the opinions of those who are not." *Revels,* 874 F.3d at 655.

    Again, similar to Dr. Catlin, the ALJ's rejection of therapist Nawy's opinion because it was based on Plaintiff's subjective complaints did not constitute a germane reason.  *See Buck*, 869 F.3d at 1049.  Additionally, the ALJ provided no record citations in support of her rejection of therapist Nawy's RFC opinion based on the "evidence as a whole," which the ALJ stated showed that Plaintiff's symptoms were "stable with treatment" and had improved.  A.R. 31.  This boilerplate statement again leaves the Court to guess regarding the supporting evidence and does not constitute a sufficiently germane reason to reject therapist Nawy's opinion.  *See G.S. v. Saul*, No. 19-cv-07543-JSC, 2021 WL 308698, at *5 (N.D. Cal. Jan. 29, 2021) (ALJ's boilerplate statement that testimony was "inconsistent with medical record" was not a sufficiently germane reason to reject lay witness

---

[8] Only "acceptable medical sources" can be considered treating sources, whose opinions may be entitled to controlling weight.  *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d).  However, for claims filed after March 27, 2017, the SSA no longer distinguishes between an "acceptable medical source" and an "other medical source."  20 C.F.R. § 404.1520c.

[9] Social Security Rulings are binding on all SSA decisionmakers*.  See Heckler v. Edwards*, 465 U.S. 870, 873 n. 3 (1984); *Bray*, 554 F.3d at 1224 (holding that Social Security Rulings "do not carry the 'force of law,' but they are binding on ALJs nonetheless").  SSR 06-03 was rescinded following the 2017 revisions that eliminated the distinction between an "acceptable medical source" and an "other medical source," but the ruling applies here since Plaintiff's claim was filed before March 27, 2017.  *See* Soc. Sec. Rul. 06-03p, rescinded (82 Fed. Reg. 15263-01) but applicable to claims filed before March 27, 2017 (noting "rescission will be effective for claims filed on or after March 27, 2017").

United States District Court
Northern District of California

United States District Court
Northern District of California

testimony); *Garrison*, 759 F.3d at 1013 (holding that an ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a substantive basis"). Moreover, even if the Court were to assume that the ALJ intended to cite to the same evidence regarding improvement as she cited to for rejecting Plaintiff's symptom testimony, as discussed, because Plaintiff's mental condition waxed and waned over the years, the isolated incidents of occasional improvement did not constitute germane reasons for rejecting Ms. Nawy's RFC opinion. *See* A.R. 573, 576, 680-83, 664, 658, 701, 703, 953, 1010-12; *see also Garrison*, 759 F.3d at 1017.

### iii.     Dr. Jarmon

The ALJ cited identical reasons for rejecting Dr. Jarmon's RFC opinion as she did for rejecting the opinions of Dr. Catlin and therapist Nawy. For the same reasons as those set forth above, the ALJ's rejection of Dr. Jarmon's opinion was not supported by substantial evidence.

In sum, the Court remands for the ALJ to reconsider the RFC opinions from Drs. Catlin and Jarmon and from therapist Nawy. Prior to rejecting or discounting the opinions, the ALJ is required to provide sufficient reasons supported by record citations.

### 3.     ALJ's Paragraph "B" Evaluation of Plaintiff's Mental Impairments

Plaintiff also argues that the ALJ erred in her Paragraph B determination at step two of the analysis when she concluded that Plaintiff possessed only moderate limitations in the four relevant mental functioning areas. *See* A.R. 26.

The Social Security Administration has supplemented the five-step sequential disability evaluation process with special regulations governing the evaluation of mental impairments at steps two and three of the five-step process. *See generally* 20 C.F.R. § 404.1520a. At step two of the sequential analysis, the ALJ considers whether a claimant suffers from a "severe" impairment, or combination of impairments. 20 C.F.R. § 404.1520. In cases involving mental impairments, the ALJ must first determine whether the claimant has a medically determinable mental impairment by evaluating the claimant's "pertinent symptoms, signs, and laboratory findings." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The ALJ must then "specify the symptoms, signs, and laboratory findings that substantiate the presence of [each determined] impairment and document

1    [the] findings." *Id.*

2         If the ALJ finds a medically determinable mental impairment, as the ALJ did here, the ALJ

3    then must assess the degree of functional limitations resulting from the claimant's mental

4    impairment with respect to the following functional areas:  1) the claimant's ability to understand,

5    remember, or apply information; 2) the claimant's ability to interact with others; 3) the claimant's

6    ability to concentrate, persist, or maintain pace; and 4) the claimant's ability to adapt or manage

7    oneself.  20 C.F.R. §§ 404.1520a(b)(2), (c)(3).  These four factors are known as the "Paragraph B"

8    criteria. *Id.*

9         Rating the degree of functional limitation at step two is a highly individualized process that

10   requires the ALJ to consider all relevant evidence to determine the extent to which a claimant's

11   impairment interferes with her "ability to function independently, appropriately, effectively, and on

12   a sustained basis." 20 C.F.R. §§ 404.1520a(c), 416.920a(c).  The ALJ rates the degree of limitation

13   in each of the four areas using a five-point scale: "None, mild, moderate, marked, and extreme."

14   *Id.*; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1077–78 (9th Cir. 2007).

15        Under Paragraph B, a claimant's mental disorder renders him disabled if it "result[s] in

16   'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."

17   20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b).  A claimant has a "marked" limitation if the

18   claimant's "functioning in this area independently, appropriately, effectively, and on a sustained

19   basis is seriously limited."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d).  By contrast, a

20   claimant has an "extreme" limitation if she is "not able to function in this area independently,

21   appropriately, effectively, and on a sustained basis."  20 C.F.R. § Pt. 404, Subpt. P, App. 1,

22   12.00(F)(2)(e).

23        Plaintiff contends that had the ALJ properly evaluated the medical evidence and opinions,

24   she would have concluded that Plaintiff possessed at least two marked limitations and, therefore,

25   met or equaled Listing 12.04, depressive, bipolar, and related disorders, and/or Listing 12.06,

26   anxiety and obsessive-compulsive disorders, thus rendering her disabled.  The Court, however,

27   declines to rule on this issue because it has already remanded the case to the ALJ to reconsider and

28   reweigh the opinions of therapist Nawy and Drs. Catlin and Jarmon.  Those opinions include

United States District Court
Northern District of California

1   multiple functional limitations, the reconsideration of which will undoubtedly impact the ALJ's

2   analysis of the Paragraph B factors on remand.  Accordingly, on remand, the ALJ is required to re-

3   evaluate the Paragraph B limitations after reweighing the medical opinions.

**B.   Plaintiff's Physical Impairments**

**1.   ALJ's Rejection of Plaintiff's Symptom Testimony**

**a.   Cardiac Impairments**

7   Plaintiff underwent an echocardiogram ("EKG") in February 2017.  A.R. 710, 975-78.  The

8   EKG showed that Plaintiff suffered from "grade one diastolic dysfunction" and a "mildly" enlarged

9   left atrium.[10]  A.R. 975, 977.  Two years later, in February 2019, consulting state agency physician

10  Dr. McMillan conducted a physical examination and noted that Plaintiff had "normal PMI," "regular

11  rhythm," and "no murmur."  A.R. 1045.

12  Plaintiff testified that she was told by her doctor that her heart condition is congenital.  A.R.

13  105.  She testified that she gets "dizzy" approximately four or five times a month and has difficulty

14  balancing after she "get[s] up too fast."  A.R. 129.  She also testified that due to her heart condition,

15  she gets tired very easily.  A.R. 99.

16  The ALJ found that Plaintiff's left atrial enlargement constituted a severe impairment at step

17  two, but concluded that her testimony regarding the limiting effects associated with her heart

18  condition was inconsistent with "the evidence as a whole."  A.R. 25, 28.  In support, the ALJ noted

19  that there was no evidence of "ongoing treatment for [Plaintiff's] heart condition," and that "[t]he

20  treating records do not show abnormal heart sounds or signs."  A.R. 28.

21  Plaintiff argues that having concluded that her heart condition was severe, the ALJ erred by

22

23  [10] "Diastolic dysfunction" is "the inability of the heart to relax and fill normally" and is "characterized by a thickened ventricular muscle, poor ability of the left ventricle to distend,

24  increased ventricular filling pressure, and a normal or increased ejection fraction."  3 Soc. Sec. Law & Prac. § 42:29, Chronic Heart Failure (2022).  Healthcare providers use a grading system to

25  determine the severity of diastolic dysfunction, marking the dysfunction from grades one to four. Cleveland Clinic, Diastolic Dysfunction, https://my.clevelandclinic.org/health/ diseases/23434-

26  diastolic-dysfunction (last visited Sept. 2, 2022).  Grade one "is slightly impaired diastole" and "is a common finding in people over age 60."  *Id.*

27  By contrast, left atrial enlargement "is an anatomic variation of the left atria and is a result of

28  increased left atrial pressure for a prolonged period."  Parajuli, Prinyanka, *Left Atrial Enlargement*, National Library of Medicine (May 12, 2022), https://www.ncbi.nlm.nih.gov/books/ NBK553096/.

United States District Court
Northern District of California

1    rejecting her symptom testimony based on an absence of objective medical evidence.  The Court

2    agrees.

3            Given the EKG test results, Plaintiff "presented objective medical evidence" of her cardiac

4    impairments, which "could reasonably be expected to produce the . . . symptoms alleged." *Anderson*

5    *v. Saul*, 783 F. App'x 697, 698 (9th Cir. 2019) (quoting *Lingenfelter*, 504 F.3d at 1036 (9th Cir.

6    2007)).  Accordingly, the ALJ could "reject [Plaintiff's] testimony about the severity of [her]

7    symptoms only by offering specific, clear and convincing reasons for doing so."  *Id.*

8            Here, the ALJ's rejection of Plaintiff's cardiac-related symptom testimony was based on a

9    lack of medical evidence *and* alleged inconsistencies with the medical evidence.  However, neither

10   reason was sufficient.  First, Ninth Circuit law does not permit the ALJ to reject Plaintiff's related

11   symptom testimony based on a lack of treatment.  *See Johnson v. Kijakazi*, No. 19-17359, 2022 WL

12   1553259, at *2 (9th Cir. May 17, 2022) ("Although an ALJ may reject a claimant's testimony

13   because it is contradicted by the medical evidence, lack of medical evidence cannot form the sole

14   basis for discounting [symptom] testimony.") (citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

15   2005)).  Second, the ALJ failed to provide substantial evidence demonstrating that Plaintiff's cardiac

16   symptom testimony was, in fact, contradicted by the medical evidence.  *See Rollins v. Massanari*,

17   261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole

18   ground that it is not fully corroborated by objective medical evidence, the medical evidence is still

19   a relevant factor in determining the severity of the claimant's pain and its disabling effects.");

20   *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (concluding that inconsistencies between a

21   claimant's testimony and the medical evidence of record, rather than a mere lack of support from

22   the medical evidence, is a clear and convincing reason, supported by substantial evidence, for giving

23   less weight to a claimant's testimony).

24           Notably, the ALJ did not provide any record citations in support of the proposition that

25   Plaintiff's treating records contradicted her related symptom testimony, and this failure to "link the

26   [Plaintiff's symptom] testimony to particular parts of the record supporting the adverse credibility

27   determination" constituted error.  *Brown-Hunter*, 806 F.3d 487, 493–94 (9th Cir. 2015)*; see* A.R.

28   28.  The *post hoc* reasons included in the Commissioner's cross-motion were not cited by the ALJ

United States District Court
Northern District of California

18

and cannot properly be considered here.  Dkt. No. 25 at 10; *cf.* A.R. 28; *see also Brown-Hunter*, 806 F.3d at 494 (noting that court is "constrained to review the reasons the ALJ asserts" in reviewing the ALJ's credibility determination); *Orn*, 495 F.3d at 630 (stating that the court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely").

Nevertheless, even if the Court were to consider the medical evidence cited by the Commissioner, the result would be same.  The select instances of normal heart rhythm and the absence of murmur did not contradict Plaintiff's account of symptoms of dizziness and fatigue.  *See Johnson*, 2022 WL 1553259, at *2 (concluding that ALJ failed to provide substantial evidence for discounting claimant's testimony that she suffered from dizziness and shortness of breath due to her cardiac impairments where ALJ noted that claimant typically had "normal to mild cardiac diagnostic findings").

For these reasons, the ALJ failed to provide specific, clear and convincing reasons for discounting Plaintiff's symptom testimony regarding her cardiac impairments.

### b.   Left-Hand Impairment

In 2011, Plaintiff fractured a finger on her left hand when the bus on which she was riding had an accident, and she was thrown forward and hit her hand.  A.R. 724-25.  Plaintiff's left arm was splinted, and she subsequently had two pins placed in her left hand following the accident.  A.R. 864.  She was also given prescription medication for the pain and started on "sensitization therapy."  A.R. 864.  At a follow-up appointment in July 2011, a physician from the Alameda County Medical Center observed that Plaintiff had "full range of motion to the left hand of her fingers, one through four."  A.R. 864.  However, the examining physician also observed that Plaintiff was unable to flex her fifth finger, and that she had a tingling sensation in her fourth and fifth fingers.  A.R. 864.  The physician continued Plaintiff's prescription pain medications, hand therapy, and additional sensitization therapy.  A.R. 864-65.

Plaintiff testified that she has difficulty using her left hand due to the 2011 injury.  A.R. 67-69, 101, 103, 122-30.  She stated that her left hand sometimes throbs and that her fingers go numb.  A.R. 67, 124-25.  Plaintiff testified that she is forced to use her right hand because she often drops

1    items that she attempts to pick up with her left hand, including her phone, which she has broken

2    multiple times.  A.R. 124-25.

3         Unlike Plaintiff's cardiac impairments, the ALJ found that Plaintiff's left-hand impairment

4    was not severe prior to discounting her testimony.  A.R. 25.  The ALJ subsequently cited one reason

5    for discounting Plaintiff's symptom testimony regarding her left hand:  Dr. McMillan's February

6    2019 finding that Plaintiff "had normal motor strength in all extremities, normal reflexes, and

7    sensation."  A.R. 28 (citing A.R. 1045).

8         The ALJ, however, erred in her interpretation of Dr. McMillan's findings because Dr.

9    McMillan did not, in fact, conclude that Plaintiff had "normal motor strength" in her left hand.

10   Instead, Dr. McMillan's test results noted that Plaintiff's left hand grip strength is significantly

11   compromised as compared to her right hand.  *See* A.R. 1043, 1045 (stating that Plaintiff had a prior

12   "left hand fracture" and that she had twenty-three kilograms of grip strength in her right hand and

13   thirteen kilograms of grip strength in her left hand).[11]  Accordingly, Plaintiff's compromised grip

14   strength corroborated her own testimony regarding the limitations associated with her left hand.  *See*

15   A.R. 124-25 (noting difficulty holding and picking up items with her left hand).

16        Thus, the ALJ failed to offer a clear and convincing reason for rejecting Plaintiff's testimony

17   regarding her left-hand impairment.

18                    **c.      Asthma**

19        Plaintiff has utilized an albuterol inhaler for many years.  A.R. 602, 656, 717, 979, 1043-46.

20   She was diagnosed with "reactive airway disease" in July 2014, and subsequently underwent several

21   pulmonary function tests later in 2014 following that diagnosis.  A.R. 602, 594-98.  Following the

22   Appeals Council's remand, Dr. McMillan examined Plaintiff in February 2019, and noted Plaintiff's

23   history of asthma, but observed no "wheezing" or "rales," and diagnosed her with "mild intermittent

24   asthma."  A.R. 1043, 1045, 1046.

25        Plaintiff testified that she has asthma attacks approximately two to three times per week.

26

27   ───────────────
     [11] A 2011 study found that the average grip strength for women ages 60-69 in the left hand was
     twenty-three kilograms.  Nicola M. Massy-Westropp, *Hand Grip Strength: Age and Gender*
28   *Stratified Normative Data in a Population-Based Study*, National Library of Medicine (April 14,
     2011), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3101655/.

United States District Court
Northern District of California

United States District Court
Northern District of California

A.R. 70, 114.  She noted that her asthma attacks are worse when she is under stress, and that she then experiences shortness of breath and/or difficulty breathing.  A.R. 71.  Plaintiff attested that she typically finishes one inhaler every two months.  A.R. 115.  She testified that it often takes her approximately thirty to forty-five minutes to recover from an asthma attack.  A.R. 71.

The ALJ found that Plaintiff's asthma was not severe at step two, and, like Plaintiff's left-hand impairment, offered one reason for discounting Plaintiff's asthma testimony:  Dr. McMillan's "physical examination not[ing] no[] . . . respiratory abnormalities," and "no wheezing or rales."  A.R. 25, 28.  Again, while the ALJ is correct that those were the results of Dr. McMillan's examination, significantly, the ALJ did not provide any explanation as to how the single examination findings are inconsistent with Plaintiff's symptom testimony regarding her need for an inhaler, her shortness of breath, and the frequency of attacks.[12]  *See Johnson*, 2022 WL 1553259, at *2.

In conclusion, the ALJ's rejection of Plaintiff's subjective symptom testimony regarding her physical impairments was not supported by substantial evidence.

### 2.    ALJ's Step Two Severity Determination Regarding Plaintiff's Asthma and Left-Hand Impairment

Plaintiff also argues that the ALJ erred at step two in concluding that her asthma and left-hand impairments were not severe.  For the reasons below, the Court agrees that the ALJ erred at steps two and four regarding Plaintiff's left-hand impairment.

#### a.    Legal Standards

At step two of the five-step sequential evaluation for disability claims, an impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities."  20 C.F.R. § 404.1522(a).  "Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  *Smolen*, 80 F.3d at 1290 (quotation omitted).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has

---

[12] The Court notes that the Commissioner concedes that the Plaintiff's "reactive airway disease" is in fact asthma.  *See* Dkt. No. 25 at 2 ("It is undisputed that Plaintiff has asthma."); A.R. 602.

no more than a minimal effect on an individual[']s ability to work." *Id.* (quotations omitted).  A severe impairment "must be established by objective medical evidence from an acceptable medical source," 20 C.F.R. § 416.921, and the ALJ must "consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Smolen*, 80 F.3d at 1290 (citations omitted).

In practice, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290; *see also Simpson v. Berryhill*, No. 17-cv-05491-BLF, 2019 WL 1003355, at *3–4 (N.D. Cal. Mar. 1, 2019) ("Step two is merely a threshold determination meant to screen out weak claims.") (quoting *Buck*, 869 F.3d at 1048).  "[Step two] is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck*, 869 F.3d at 1048-49.

If the ALJ erroneously determines that an alleged impairment is not "severe" at step two, the reviewing court must determine whether the error was harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Burch*, 400 F.3d at 679.  Any failure to classify an impairment as non-severe at step two is harmless if the ALJ subsequently considered the limitations posed by the impairment at a later step in the inquiry. *See McGuire v. Kijakazi*, No. 20-35898, 2021 WL 5861284, at *1 (9th Cir. Dec. 7, 2021) (finding that the ALJ's error at step two was harmless since the ALJ considered the non-severe impairment later in the inquiry); *Tadesse v. Kijakazi*, No. 20-16064, 2021 WL 5600149, at *1 (9th Cir. Nov. 30, 2021) ("Although an error at step two may be considered harmless where the ALJ moves to the next step in the analysis, the decision must reflect that the ALJ considered any limitations posed by the impairment at either step four or step five.").

### b.    Analysis

### i.    Left-Hand Impairment

At step two, the ALJ found that Plaintiff's left-hand impairment was not severe, noting that there was no evidence that Plaintiff was receiving treatment for her symptoms or that she "suffer[ed] from any neurological deficits." [13]  A.R. 25.  In support, the ALJ again cited to Dr. McMillan's

---

[13]Both the ALJ and Dr. McMillan mistakenly refer on occasion to Plaintiff's left-hand impairment as a right-hand impairment.  *See* A.R. 1046, 25.  There is, however, no dispute that Plaintiff suffered from a left-hand impairment only.  *See* Dkt. No. 25 at 4 n.5.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  physical examination for the proposition that Plaintiff "had normal motor strength in all extremities,

2  normal reflexes, and sensation."  A.R. 25 (citing A.R. 1045).

3        However, as noted above with respect to Plaintiff's related symptom testimony, the ALJ

4  erred in her interpretation of Dr. McMillan's findings, which actually demonstrated that Plaintiff's

5  left-hand grip strength is significantly compromised as compared to her right hand.  *See* A.R. 1043,

6  1045.  This very error also undermined the ALJ's determination that Plaintiff's left-hand impairment

7  was not severe at step two.  *See* A.R. 28.

8        The Court is unable to conclude that the step two error is harmless based on the ALJ's

9  subsequent consideration of Plaintiff's left-hand impairment at step four because, at step four, the

10  ALJ declined to account for any limitations associated with Plaintiff's left hand grip strength in

11  conjunction with her RFC.  A.R. 32.  Instead, the ALJ accepted Dr. McMillan's RFC opinion that

12  Plaintiff had no limitations in terms of her upper extremities, and did not further address the impact

13  of Plaintiff's left-hand impairments (or Dr. McMillan's grip strength finding) in conjunction with

14  her RFC.  *See* A.R. 32.  Notably, Dr. McMillan's RFC opinion regarding Plaintiff's "upper

15  extremities" itself fails to address and/or account for Plaintiff's left hand impairment, and is therefore

16  unsupported by his own clinical findings regarding Plaintiff's grip strength and Plaintiff's symptom

17  testimony.[14]  *See* A.R. 1046, 1047, 1049.

18        For these reasons, the Court concludes that the ALJ erred at steps two and four in her

19  assessment of Plaintiff's left-hand impairment when she failed to consider the reduced grip strength

20  in Plaintiff's left hand.   Additionally, the Court has already concluded above that the ALJ

21

22  _____

23  [14] In what appears to be an oversight or mistake, Dr. McMillan failed to address Plaintiff's left hand grip strength in his ultimate RFC opinion regarding Plaintiff's upper extremities.  *See* A.R. 1046.

24  He opined that Plaintiff could occasionally lift and carry fifty pounds and could frequently lift and carry twenty-five pounds, and that she possessed no functional limitations in terms of "reaching in all directions" or "with gross or fine manipulations."  A.R. 1046.  Dr. McMillan further opined that

25  Plaintiff could frequently use both her right and left hands to reach, handle, finger, and feel items, and to push/pull.  A.R. 1049.

26  Because Plaintiff challenged Dr. McMillan's opinion on this issue, the Court rejects the Commissioner's suggestion that Plaintiff waived any arguments regarding Dr. McMillan's opinion.

27  *See* Dkt. No. 25 at 5; Dkt. No. 22 at 12 (arguing that Dr. McMillan's opinion was "not supported by his own clinical findings, unsupported by the record, and does not constitute substantial evidence");

28  *see also* Dkt. No. 31 at 1.

United States District Court
Northern District of California

1    erroneously discounted Plaintiff's symptom testimony regarding her left-hand impairment, which

2    the ALJ is required to consider in evaluating the severity of Plaintiff's left-hand impairment at step

3    two and her RFC at step four.  *See Smolen*, 80 F.3d at 1290 (ALJ is required to consider subjective

4    symptom testimony at step two severity determination).

5         Accordingly, on remand, after reconsidering Plaintiff's symptom testimony regarding her

6    left-hand impairment, the ALJ must also re-evaluate the severity of the impairment at step two and

7    Plaintiff's RFC at step four, with special consideration to the reduced grip strength in Plaintiff's left

8    hand.

9                        **ii.    Asthma**

10        The ALJ found that Plaintiff's asthma was not severe at step two because her "symptoms do

11   no more than minimally interfere with her ability to perform basic work activities."  A.R. 25.  In

12   support, the ALJ cited to the results of Plaintiff's August 2014 pulmonary function test, clinical

13   physical examinations, the absence of emergency or other care, and Dr. McMillan's February 2019

14   physical examination findings.  A.R. 25 (citing A.R. 594, 598, 1043-46).

15        Unlike Plaintiff's left-hand impairment discussed above, the ALJ's description and

16   interpretation of the objective medical record regarding Plaintiff's asthma is accurate and supported

17   by substantial evidence.  *See* 20 C.F.R. § 416.921 (severe impairment is established "by objective

18   medical evidence from an acceptable medical source"); *see* A.R. 598 (2014 pulmonary function test

19   reveals "normal spirometry," "mild decrease in diffusion," and normal oxygen saturation).

20   However, the ALJ was also required to consider Plaintiff's subjective asthma testimony in her step

21   two severity determination and her step four RFC assessment.  *See Smolen*, 80 F.3d at 1290.  As

22   discussed above, the Court has already concluded that the ALJ erroneously discounted Plaintiff's

23   symptom testimony regarding her asthma.  Moreover, because the ALJ declined to add additional

24   modifications to Plaintiff's RFC based on her asthma at step four of the analysis, the Court is unable

25   to conclude that any step two error would have been harmless.[15]  *See McGuire*, 2021 WL 5861284,

26

27   _____

     [15] At step four, the ALJ again noted that Plaintiff's 2019 physical examination revealed no

28   respiratory "abnormalities" and "no wheezing or rales," and the ALJ declined to add any
     modifications to Plaintiff's RFC based on her asthma.  A.R. 28.

at *1.

Accordingly, on remand, after reconsidering Plaintiff's symptom testimony regarding her asthma, the ALJ must revisit the step two severity determination and the step four RFC assessment as to Plaintiff's asthma.

### C.    ALJ's RFC Determination Regarding Physical and Mental Impairments

An ALJ assesses a claimant's RFC "based on all the relevant evidence in [the] case record." 20 C.F.R. § 416.945(a)(1).  The ALJ must consider both the medical evidence and "descriptions and observations of [the claimant's] limitations from [the claimant's] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain, provided by" the claimant, family, friends, and other people.  *Id.* § 416.945(a)(3).

As discussed above, the Court concludes that the ALJ erred in several respects, including: (1) in weighing the medical opinions from Dr. Catlin, Dr. Jarmon, and therapist Nawy; (2) in rejecting Plaintiff's symptom testimony regarding both her mental and physical impairments; and (3) in the ALJ's steps two and four assessments of Plaintiff's left-hand impairment.

The ALJ's assessment of Plaintiff's RFC was, therefore, tainted by these errors and was not supported by substantial evidence.  Accordingly, on remand, the ALJ is required to reassess Plaintiff's RFC in accordance with the Court's rulings on the other issues above.

### D.    ALJ's VE Hypothetical Regarding Physical and Mental Impairments

Finally, the ALJ made her step five determination regarding the work that Plaintiff could perform based on a defective VE hypothetical that was tainted by the same errors listed above and likely did not include the appropriate RFC and limitations.  *See* A.R. 33-34, 130-34; *Magallanes*, 881 F.2d at 756 (An ALJ may meet their step five burden by propounding to a vocational expert a hypothetical based on medical assumptions supported by substantial evidence in the record.); *Tackett*, 180 F.3d at 1101 (ALJ's depiction of the claimant's impairments must be "accurate, detailed, and supported by the medical record"); *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

On remand, the ALJ is required to propound a new hypothetical to the VE, accounting for the ALJ's reconsidered findings regarding Plaintiff's RFC.

**IV.     DISPOSITION AND CONCLUSION**

Plaintiff asks the Court to remand for payment of benefits.  The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g).  "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted).

It is not clear from the record here that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Therefore, remand is appropriate.  As discussed above, on remand, the ALJ must reconsider: (1) the weight accorded the medical opinions from Dr. Catlin, Dr. Jarmon, and therapist Nawy; (2) Plaintiff's symptom testimony regarding her mental and physical impairments; (3) the step two Paragraph B evaluation of Plaintiff's mental impairments; (4) the steps two and four assessments of Plaintiff's asthma and left-hand impairment; (5) Plaintiff's RFC; and (6) at step five, whether work exists in significant numbers given Plaintiff's recalibrated RFC and the revised VE hypothetical that accounts for Plaintiff's recalibrated RFC.

Based on the foregoing, Plaintiff's motion for summary judgment is GRANTED, the Commissioner's motion for summary judgment is DENIED, and this matter is remanded for further proceedings consistent with this order.  The Clerk shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated:  September 7, 2022

ALEX G. TSE
United States Magistrate Judge

United States District Court
Northern District of California

26